1  ARIEL E. STERN, ESQ.
   Nevada Bar No. 8276
2  CHRISTINE M. PARVAN, ESQ.
   Nevada Bar No. 10711
3  AKERMAN SENTERFITT LLP
   1160 Town Center Drive, Suite 330
4  Las Vegas, Nevada  89144
   Telephone:     (702) 634-5000
5  Facsimile:      (702) 380-8572
   Email: ariel.stern@akerman.com
6  Email: christine.parvan@akerman.com

7  *Attorneys for Defendants*
   *Wells Fargo Bank, N.A. dba America's*
8  *Servicing Company*

9              **UNITED STATES DISTRICT COURT**

10                  **DISTRICT OF NEVADA**

11

12  COLLEEN M. WENSLEY,                    Case No.:  3:11-cv-00809-ECR-WGC

13                        Plaintiff,

                                          **MOTION TO DISMISS FOR FAILURE**
14  vs.                                   **TO STATE A CLAIM AND TO**
                                          **EXPUNGE LIS PENDENS**
15  FIRST NATIONAL BANK OF NEVADA;
    STEWART TITLE COMPANY; NATIONAL
16  DEFAULT SERVICING CORPORATION;
    AMERICA'S SERVICING COMPANY;
17  CHICAGO DEFAULT SERVICES; STANLEY
    S. SILVA; and DOES 1-25 CORPORATIONS,
18  DOES and ROES 1-25 Individuals, Partnerships,
    or anyone claiming any interest to the property
19  described in the action,

20                        Defendants.

21          Defendant Wells Fargo Bank, N.A. dba America's Servicing Company (**ASC**) moves

22  pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff Colleen M. Wensley's complaint.[1]  This

23

24  _____

    [1] In the event the Court must look beyond the complaint and recorded documents, Wells Fargo also moves for
25  summary judgment pursuant to Fed. R. Civ. P. 56 on Reynolds's first claim for relief.  Fed. R. Civ. P. 56(a) provides that
    "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and
26  the movant is entitled to judgment as a matter of law."  An issue is "genuine" only if there is a sufficient evidentiary
    basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could
27  affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986);
    *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  The party moving for summary judgment has the
28  burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all
    inferences in the light most favorable to the non-moving party.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th
    Cir. 1982), *cert. denied*, 460 U.S. 1085 (1983).

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1   Motion is based on the pleadings and papers on file herein, the Memorandum of Points and

2   Authorities below, and any oral argument this Court should entertain.

3                          **MEMORANDUM OF POINTS AND AUTHORITIES**

4                                                **I.**

5                                         **INTRODUCTION**

6          This is one of a series of lawsuits filed by the same attorney on behalf of borrowers who

7   defaulted on their mortgage loans.   Plaintiff Colleen Wensley attempts to avoid her payment

8   obligations in part by claiming that ASC, along with other defendants, fraudulently induced her to

9   enter into the subject loan agreement.   In addition, Wensley alleges a nebulous industry-wide

10  conspiracy to make fraudulent loans.   However, Wensley does not provide anything more than

11  inflammatory legal conclusions and baseless assertions regarding ASC's allegedly wrongful actions.

12         This Court and others have consistently dismissed similarly pled claims for failure to state a

13  claim upon which relief can be granted.   *See, e.g., Hearne v. Countrywide Home Loans, Inc.*, Case

14  No. 3:08-cv-500, 2010 WL 1815424 (D. Nev. Apr. 30, 2010); *Lopez v. Exec. Trustee Servs.*, Case

15  No. 3:09-cv-180, slip op. (D. Nev. Jan. 13, 2010); *Green v. Countrywide Home Loans, Inc.*, Case

16  No. 3:09-cv-374, slip op. (D. Nev. Jan. 12, 2010) ("Green I"); *Goodwin v. Exec. Trustee Servs.*,

17  3:09-cv-00306-ECR, slip op. (D. Nev. Dec. 2, 2010; *Cervantes v. Countrywide Home Loans, Inc.*,

18  Case No. CV 09-517, 2009 WL 3157160 (D. Ariz. Sept. 24, 2009); *Ciardi v. Lending Co., Inc.*, Case

19  No. CV 10-0275-PHX-JAT, 2010 WL 2079735 (D. Ariz. May 24, 2010); *Greene v. Countrywide*

20  *Home Loans, Inc.*, 2:09-cv-02246-PMP-LRL, slip op. (D. Nev. July 27, 2010) ("Green II"); *Mesi v.*

21  *Wash. Mutual, F.A.*, Case No. 3:09-cv-00582-JCM-VPC, 2010 WL 3025209, slip op. (D. Nev. July

22  30, 2010).  The result in this case should be no different.  Indeed, and as set forth below, the majority

23  of Wensley's claims are time-barred, inapplicable to Wells Fargo, or deficient on their face.  The

24  complaint warrants dismissal with prejudice.

25  / / /

26  / / /

27

28

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

## II.

## STATEMENT OF FACTS

**A.**     **Wensley Borrowed $495,000 from First National Bank of Nevada and Secured the Loan with a Deed of Trust**

On July 27, 2005, Wensley obtained a loan in the amount of $495,000 from First National Bank of Nevada (**First National**) to purchase the property located at 8818 Harbour Cove Court, Sparks, Nevada 89434, Parcel Number 037-341-21.  Wensley secured this loan with a deed of trust against the property.  *See* Deed of Trust, **Exhibit A**.  The trustee was Stewart Title Company.  *Id*. MERS was the beneficiary under the deed of trust.  *Id*.  The Deed of Trust also allows the lender to foreclose on the property if Wensley does not make her loan payments.  *Id.* p. 5.  ASC serviced the loan.   MERS, through its attorney-in-fact, National Default Servicing Corporation (**National Default**), later assigned the deed of trust to HSBC Bank USA, National Association, as Trustee for the holders of Deutsche Alt-A Securities Mortgage Loan Trust Series 2005-5 by its attorney in fact Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage Inc. (**HSBC Trust**). *See* Corporate Assignment of Deed of Trust, **Exhibit B**.  On November 10, 2008, HSBC Trust substituted National Default as trustee.  *See* Substitution of Trustee, **Exhibit D**.

**B.**     **Wensley Defaulted on Her Loan and Defendants Initiated Foreclosure**

In September 2008, Wensley defaulted under the note.  Accordingly, ASC, through its agent, National Default, recorded a Notice of Default and Election to Sell under Deed of Trust on September 3, 2008.  *See* Notice of Default, **Exhibit C**.[2]   Wensley did not cure her default. Accordingly, on December 4, 2008, National Default, as trustee, recorded a Notice of Sale. *See* First Notice of Sale, **Exhibit E**.  The sale did not go forward.  On October 26, 2009 National Default recorded a second Notice of Sale.  *See* Second Notice of Sale, **Exhibit F**.  This sale did not go forward.  National Default subsequently recorded two more notices of sale on June 21, 2010, and December 17, 2010, respectively.  *See* **Exhibits G and H**.  However, to date, the trustee's sale has not gone forward.

---

[2]     The Notice of Default was signed by Stanley Silva, as agent for Chicago Default Servicies, as agent for National Default Servicing Corporation, as agent for America's Servicing Company.

**C.      Wensley Filed a Deficient Complaint Over Six Years After Signing the Loan Documents**

On September 27, 2011, Wensley filed her Complaint alleging ten claims for relief that include: (1) Debt Collection Violations; (2) Violation of Unfair and Deceptive Trade Practice Act; (3) Violation of Unfair Lending Practices, NRS § 598D.100; (4) Violation of the Covenant of Good Faith and Fair Dealing; (5) Violation of NRS 107.080 et seq.; (6) Quiet Title Action; (7) Fraud in the Inducement and Through Omission (which is really two causes of action); (8) Slander of Title; and (9) Abuse of Process.  On the same day Wensley filed her complaint, she recorded a *lis pendens* on the property (Washoe County Recorder, Doc. No. 4044510).  *See* Notice of Lis Pendens, **Exhibit I**. Wensley's claims either fail as a matter of law or warrant dismissal.  The Complaint fails to plead sufficient factual allegations to establish the necessary elements of the claims against ASC.  The Court should dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### III.

### LEGAL STANDARD

The standard of review applicable to a motion to dismiss under Rule 12(b)(6) is familiar; however, the Supreme Court has clarified the standard in significant ways.  Rule 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P 8(a)(2).  According to the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation' of the elements of a cause of action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1  Factual allegations are assumed true, but the court is "not bound to accept as true a legal conclusion

2  couched as a factual allegation." *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 555); *see also Clegg*

3  *v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

**IV.**

**LEGAL ARGUMENT**

**A.     Wensley's First Cause of Action for Debt Collection Violations Fails**

Wensley's claim for debt collection violations fails because ASC does not qualify as a debt

collector under 15 U.S.C. § 1692.  Wensley's claim is based on the allegation that the Notice of

Default did not contain language mandated by 15 U.S.C. §1692(e)(11) and 1692(g)(a)(1-5).  *See*,

*e.g.*, Compl. ¶72-73.  Wensley further alleges that ASC sent collection notices without obtaining the

needed license and despite knowing that the initial loan was based on future equity in the home.  *See*,

*e.g.*, Compl. ¶ 72.  Finally, Wensley alleges that the Notice of Default "is a false and deceptive

means of collecting a debt in that it represented the Note secured by the Deed of Trust had been

accelerated when in fact the Note cannot be legally accelerated without first sending a notice to the

Plaintiff of a right to cure the alleged default," because the Notice of Default failed to provide the

notices required by the deed of trust, and because the drafting, tendering, recordation, and mailing of

a Notice of Default and Election to Sell which contains the information required by the deed of trust

is a condition precedent to foreclosure.  *See*, *e.g.*, Compl. ¶ 73(b).  Wensley's debt collection

violations claim fails as a matter of law.

For ASC to be liable for a violation of the Fair Debt Collection Practices Act ("FDCPA"),

ASC "must—as a threshold requirement—be . . . a 'debt collector' within the meaning of the Act."

*Gallegos v. Recontrust Co.*, Case No. 08-cv-2245 WQH (LSP), 2009 WL 215406, at * 3 (S.D. Cal.

Jan. 29, 2009) (citing *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)).  It is not.  Indeed, "[t]he 'activity

of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the

meaning of the' FDCPA." *Id.* (quoting *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204

(D. Or. 2002)) (holding that the plaintiff improperly brought a claim challenging the lawfulness of

foreclosure proceedings pursuant to a deed of trust under the FDCPA).

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1    Here, like the defendants in *Gallegos*, ASC does not qualify as a "debt collector" within the

2    meaning of the FDCPA.  Thus, even if the Notice of Default did not contain the language required

3    by the FDCPA, Wensley's FDCPA claims would fail as a matter of law against ASC.[3]

4        Wensley's purported claims under Chapter 649 of the Nevada Revised Statutes similarly fail

5    as a matter of law, for several reasons.  **First**, the statute applies only to collection agencies, and

6    ASC is not a collection agency.  *See*, *e.g.*, NRS § 649.020(2)(b) (excepting banks from the statute).

7    As such, any claims under NRS Chapter 649, as well as any claims arising from ASC's alleged

8    failure to obtain a state collector's license, fail.  *See* Compl. ¶ 53 (alleging violation under Chapter

9    649 for failure to obtain a collector's license).  **Second**, liability under NRS Chapter 649 is premised

10   on liability under the federal Fair Debt Collection Practices Act.  *See* NRS § 649.370.  Wensley's

11   Complaint acknowledges this.  *See* Compl. at ¶ 60.  ASC cannot be liable under the FDCPA because

12   it is not a debt collector under that statute and because it provided all notices Nevada law and the

13   Deed of Trust require.  Wensley's corresponding claim under NRS Chapter 649 also fails.  **Third**,

14   apart from incorporating the FDCPA, NRS Chapter 649 does not afford Wensley a private right of

15   action.  Specifically, while the statute sets forth administrative remedies, these remedies belong to

16   the Collection Agency Advisory Board and Attorney General.  *See* NRS §§ 649.385 *et seq*.

17   Accordingly, ASC is entitled to dismissal of or summary judgment on Wensley's debt collection

18   violations claim.

19   / / /

20

21

22        [3] Wensley  asserts that ASC is not foreclosing under a valid deed of trust, but rather collecting on an unsecured
     debt because the Note was severed from the deed of trust.  *See*, *e.g.*, Compl. ¶¶ 64, 116.  This argument is wrong because

23   when a note secured by a mortgage is transferred, "transfer of the note carries with it the security, without any formal
     assignment or delivery, or even mention of the latter."  *Carpenter v. Longan*, 83 U.S. 271, 275 (1872).  "Thus, transfer of

24   the note without the mortgage does not cause the mortgage to become null, nor the note to become unsecured; the
     mortgage automatically follows the note."  *Davidson v. Countrywide Home Loans, Inc*., Case No. 09-CV-2694-IEG,

25   2010 WL 962712, at * 5 (S.D. Cal. March 16, 2010); *see Ruggia v. Wash. Mutual*, Case No. 1:09-cv-1067, 2010 WL
     1957218, at *3-4 (E.D. Va. May 13, 2010) ("A deed of trust continues to secure the holder of a note and nothing in the

26   negotiation or putative securitization of a note renders it unsecured."); *Gomez v. Countrywide Bank, FSB*, Case No. 2:09-
     cv-01489, 2009 WL 3617650, at *2-3 (D. Nev. Oct. 26, 2009) (citing *Rodney v. Ariz. Bank*, 836 P.2d 434, 436 (Ariz.

27   App. 1992));  *see also Hafiz v. Greenpoint Mortg. Funding, Inc*., 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009)
     (argument that power of sale is lost upon sale to a loan pool is "unsupported and incorrect").

28

**B.      Wensley Does Not Properly Plead a Claim for Consumer Fraud Based on Unfair and Deceptive Trade Practices**

Wensley's claim for consumer fraud, which is based on violations of the Nevada Unfair and Deceptive Trade Practices Act ("NDTPA"), fails because it is not pled with particularity and because a non-judicial foreclosure does not constitute the "sale or lease of goods and services."  In Nevada, "[a]n action may be brought by any person who is a victim of consumer fraud."  NRS § 41.600(1). Actionable consumer fraud includes misconduct under the NDTPA, codified at Ch. 598 of the Nevada Revised Statutes.  Because it is a claim for fraud, an NDTPA claim must be pled with particularity under Fed. R. Civ. P. 9(b).  *Thorne v. Wagner,* Case No. 2:06-cv-492, 2007 WL 496373, at *3 (D. Nev. Feb. 13, 2007) (*citing Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999)).  To plead with particularity, the complaint must include averments to the time, the place, the identity of the parties involved, and the nature of the fraud.  *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989).

In her second claim, Wensley asserts ASC violated NRS §§ 598.0923 (1) and (3).  These statutory sections provide:

> A person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly:
> 1. Conducts the business or occupation without all required state, county or city licenses.
> . . .
> 3. Violates a state or federal statute or regulation relating to the sale or lease of goods or services.

Wensley alleges ASC and other defendants "did not have the required foreign collector's license when it [sic] sent the aforementioned notices..."  *See* Compl. ¶ 81.  As set forth above, however, ASC is not a debt collector.  Moreover, Wensley's complaint does not specify which notice previously mentioned in her complaint triggered the alleged violation of NRS § 598.0923 (1) or when it was sent.  The complaint's consumer fraud allegations are so deficient they fail even the notice pleading standards of Rule 8(a), and certainly do not satisfy Rule 9(b).

Further, Wensley does not explain what action by ASC is related to "the sale or lease of goods or services" as required for NRS § 598.0923 (3) to apply.  None of the allegations in the complaint even suggests ASC sold or leased goods or services to Wensley.  Wensley's second claim

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

fails because it is not pled with particularity and because NRS §§ 598.0923 (1) and (3) do not apply to non-judicial foreclosure of Wensley's real property.

**C.    Wensley's Third Claim Fails Because It Is Time-Barred and Because Wensley Does Not Allege Actions by ASC that Violate the ULPA**

**1.    Wensley's ULPA Claim is Time-Barred**

Wensley's third claim for relief alleges a violation of the Unfair Lending Practices Act, NRS Ch. 598D ( the "ULPA").  However, ASC did not originate the loan; ASC merely serviced the loan.  Even if ASC was the original lender, the statute of limitations for a ULPA claim is three years.  *See* NRS § 11.190(3)(a) (actions for liability founded upon a statute are subject to a three-year statute of limitations).  Wensley signed her loan documents in 2005, at which point she was in possession of the facts giving rise to the asserted cause of action.  Under the applicable 2003 version of the ULPA, a lender committed an unfair lending practice by approving a loan based solely on the equity in the property without considering the borrower's ability to repay.  Wensley would have known prior to closing whether she provided First National, the lender, with documents confirming assets, liabilities, income and employment.[4]  The complaint fails to provide any basis to conclude Wensley could not reasonably have discovered the alleged violation in 2005.  Further, even if any such violation existed, ASC was not the lender of the subject loan.

**2.    The 2003 ULPA Applied Only to High Cost, Refinance Loans, And Is Therefore Inapplicable**

Wensley's ULPA claim also fails because her loan is not subject to the statute.  The 2003 version of the ULPA, which applies to Wensley's 2005 loan, defined a "home loan" as a "consumer credit transaction" that (1) "is secured by a mortgage loan which involves real property located within [Nevada]" and (2) "[c]onstitutes a mortgage under §152 of the Home Ownership and Equity Protection Act of 1994" ("HOEPA") and the regulations adopted pursuant to HOEPA, including 12 C.F.R. §226.32.  NRS § 598D.040 (2005).

---

[4]    Moreover, Wensley was aware prior to closing that she signed a loan application in which she made representations, under penalty of federal law, regarding her financial circumstances.

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

Wensley's loan is not a "home loan" under the ULPA unless it is a "mortgage" under HOEPA.  HOEPA's definition of "mortgage" is very limited and includes only certain specialized loans.   Section 152 of HOEPA defines a "mortgage" in pertinent part as "a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction . . ." in which either "the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor" or "the total point and fees payable by the consumer at or before the closing will exceed the greater of (i) 8 percent of the total loan amount; or (ii) $400."  15 U.S.C. §1602 (aa)(1); 12 C.F.R. §226.32(a)(1).  A "residential mortgage transaction" is "a transaction in which a . . . deed of trust . . . is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling."   Reg. Z §226.2(a)(24).

Wensley does not allege the loan was a "home loan" subject to the ULPA, nor does she allege any facts to support that conclusion.  Wensley also does not allege facts in the complaint to show that the loan was a high-cost loan subject to 15 U.S.C. § 1602(aa).  The conclusory assertion that the loan does fit under the ULPA is exactly the type of pleading the Supreme Court disapproved in *Iqbal*.  *See Iqbal*, 129 S. Ct. 1949-50 (conclusory allegations not entitled to presumption of truth).  This is fatal to the ULPA claim because the 2007 amendment, which expanded the scope of the ULPA, cannot be applied retroactively.  *See U.S. v. Perry*, 431 F.2d 1020, 1023 (9th Cir. 1970) (statutes are presumed to operate only prospectively).  In *Velasquez v. HSBC Mortgage Services*, this Court held that a case commenced in 2009 based on a 2005 loan was subject to the law as it existed in 2005, not as amended in 2007.  Case No. 2:09-cv-784-KJD-LRL, 2009 WL 2338852, at *3-4 (D. Nev. July 24, 2009).  It held that the 2005 language applied, and dismissed the claim because the loan was not within the statute when originated.  *Id*. at *4; *accord Aguilar v. WMC Mortg. Corp*., Case No. 2:09-cv-1416-ECR-PAL, 2010 WL 185951, at *5-6 (D. Nev. Jan. 15, 2010).  The Court should follow its precedents by dismissing Plaintiff's ULPA claim.

/ / /

**D.     There is No Breach of The Covenant of Good Faith and Fair Dealing for Pre-Contract Actions and Where Plaintiff Does Not Allege Actions that Contravene the Purpose of the Contract**

Wensley claims ASC and other defendants breached the covenant of good faith and fair dealing by "luring Plaintiff into the initial Loans, continuing to collect on said Loans, executing Notices on said loan, and by wrongfully declaring she was qualified based on the anticipated future equity in the home, and not based upon the ability to pay from income and other assets..." *See* Compl. ¶86.  Wensley further alleges that the defendants' "interpretation of the subject mortgage contract" and "continued communications and monthly statements sent to Plaintiff, violates the public policy of the State of Nevada." *See* Compl. ¶96.  These allegations do not support a breach of the implied covenant of good faith and fair dealing claim.

A claim for breach of the covenant of good faith and fair dealing requires the following:  (1) Plaintiff and moving Defendants were parties to a contract; (2) moving Defendants owed a duty of good faith to Plaintiff; (3) moving Defendants breached that duty by performing in manner that was unfaithful to the purpose of the contract; and (4) Plaintiff's justified expectations were denied.  *See Perry v. Jordan,* 111 Nev. 943, 948, 900 P.2d 335, 338 (1995).  The implied duty of good faith and fair dealing arises in all contracts.  *See A.C. Shaw Constr. v. Washoe County*, 105 Nev. 913, 914, 734 P.2d 9 (1989).  However, to be actionable, the breach must have occurred after the formation of the contract, not before.  *See Centerville Builders, Inc., v. Wynne*, 683 A.2d 1340, 1342 (R.I. 1996) (holding that the covenant of good faith and fair dealing "only applies after a binding contract is formed") (citing *Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 10 (1st Cir. 1994)).

Wensley cannot establish that ASC breached the implied covenant of good faith and fair dealing by allegedly luring her into the subject loan.  ASC was not the lender of the subject loan. Even if ASC was the lender, Wensley's claim still fails because, prior to the formation of a contract, there is no implied duty of good faith and fair dealing because there is no contract.  *See Centerville Builders*, 683 A.2d at 1342.

Further, Wensley pleads no facts that, if proven, would establish that ASC contravened the spirit of the contract.  This failure requires dismissal.  *See Aguilar*, 2010 WL 185951, at *6 (dismissing implied covenant claim that did not plead facts to explain how defendant's manner of

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1
2
3
4
5
6
7
8

complying with the note and deed of trust contravened the spirit of the contract).  Likewise, Wensley does not explain how "continued communications and monthly statements" thwarted the legitimate purposes of the loans or deed of trust.  Wensley's implicit contention that post-default foreclosure contradicts the spirit and intent of the deed of trust is absurd.  *Sam v. Am. Home Mortg. Serv., Inc*., Case No. 2:09-cv-2177, 2010 WL 761228, at *6 (E.D. Cal. March 3, 2010) ("[f]oreclosing upon a loan where such foreclosure is permissible by law and the terms of the loan agreement does not deprive plaintiff of any benefits reasonably expected by the parties to the loan").  The Court should dismiss the claim for breach of the implied covenant of good faith and fair dealing

9
10

**E.      Wensley's Wrongful Foreclosure Claim Fails Because There is No Completed Sale, Wensley Breached the Loan Agreement, and Wensley Has Not Complied With The Tender Rule**

11
12
13
14
15
16
17
18
19

Wensley's violation of NRS 107.080 claim, which appears to be a disguised wrongful foreclosure claim, fails because it does not allege a foreclosure sale or that Wensley was not in default.  *See* Compl. ¶¶ 99-113.  To succeed on a claim for wrongful foreclosure, Wensley must show that (1) ASC exercised a power of sale or foreclosed on her property and (2) at the time the power of sale was exercised, there was no breach of condition or failure of performance by Wensley that would have authorized the foreclosure or exercise of power of sale.[5]  *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 304, 662 P.2d 610, 623 (Nev. 1983).  Wensley's complaint necessarily fails under this standard, as the power of sale has not been exercised against the property in this case, and Wensley cannot show that she has not breached the loan contract.

20      / / /

21      / / /

22      / / /

23      / / /

24

25
26
27
28

[5]      *See also Cilluffo v. Wash. Mutual*, Case No. C09-02518 HRL, 2010 WL 431896, at *3 (N.D. Cal. Feb. 2, 2010) ("Claims for wrongful foreclosure have been found premature where there has  . . . not yet been a sale."); *Santos v. Countrywide Home Loans, Inc.*, Case No. Civ. 2:09-02642 WBS DAD, 2009 WL 3756337, at *3 (E.D. Cal. Nov. 6, 2009) (noting that "'there is no cause of action for 'wrongful threatened foreclosure'"); *Swanson v. EMC Mortg. Corp.*, Case No. CV F-09-1507 LJO DLB, 2009 WL 3627925, at *12 (E.D. Cal. Oct. 29, 2009) ("In the absence of a foreclosure sale, [defendants] cannot be liable for 'wrongful foreclosure.'"); *Vega v. JPMorgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1113 (E.D. Ca. 2009).

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

### 1.    Wensley Cannot State a Claim for Wrongful Foreclosure

#### a.    Wensley's Claim Is Premature As No Foreclosure Sale Has Occurred

Initially, it is axiomatic under Nevada law that the tort of wrongful foreclosure is available only when "the power of sale was exercised" and a "foreclosure occurred."  *See Haley v. Elegen Home Lending, LP*, Case No. 3:10-cv-00046-LRH-RAM, 2010 WL 1006664, at *1-2 (D. Nev. Mar. 16, 2010) ("A claim for wrongful foreclosure does not arise until the power of sale is exercised"). The subject property has not yet been foreclosed.   Wensley's wrongful foreclosure claim is premature and fails because speculative future acts cannot form the predicate of an actual case or controversy for adjudication.[6]

#### b.    Wensley Additionally Fails To Allege Absence of a Default in Loan Payments

A wrongful foreclosure action will not lie in Nevada unless the plaintiff pleads that "no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale."  *Collins*, 99 Nev. at 304, 662 P.2d at 623.  Thus, the "material issue" in a wrongful foreclosure claim is whether "the trustor was in default when the power of sale was exercised," and wrongful foreclosure claims have therefore been dismissed when plaintiffs fail to allege that they do not owe money on their loan, *i.e.*, that he was not "in default when the power of sale was exercised." *Collins*, 99 Nev. at 304, 662 P.2d at 623; *see also Haley*, 2010 WL 1006664, at *1-2 (noting that "[a]n action for wrongful foreclosure requires that, at the time of the foreclosure sale, the plaintiff was not in breach of the mortgage contract"); *Aguilar*, 2010 WL 185951, at *2 (dismissing claim because plaintiffs "admit[ted] that they were delinquent"); *Larson v. Homecomings Fin., LLC*, Case No. 2:09-cv-01015-RLH-GWF, 2009 WL 5538536, at *5 (D. Nev. Sept. 1, 2009) (same); *Spracklin v. CR Title Co.*, Case No. 3:10-

---

[6]  *See Buzz Stew, LLC, v. City of N. Las Vegas*, 181 P.3d 670, 674 (2008) (citing *Doe v. Bryan*, 102 Nev. 523, 525, 728 P.2d 443, 444 (1986)).

cv-267-RCJ-VPC, slip op. at 4 ("Under Nevada law, Plaintiff cannot sustain a cause of action for wrongful foreclosure is [sic] the Plaintiff is in default.").[7]

This same claim was rejected by this Court in *Green v. Countrywide Home Loans, Inc. See Green I*, slip op. at 4 (holding that plaintiffs failed to state a claim for wrongful foreclosure because they failed to allege that they were not in default on their loans when foreclosure began). Here, as in *Green I*, Wensley cannot allege she is current on her mortgage payments.[8]   Accordingly, her claim for wrongful foreclosure fails as a matter of law and should be dismissed.[9]   *See, e.g.*, *Coward v. First Magnus Fin. Corp.*, Case No. 2:09-cv-01143-RCJ-GWF, 2009 WL 3367398, at *9 (D. Nev. Oct. 14, 2009).

### c.   Wensley Did Not Comply With The Tender Rule

Moreover, Wensley's fifth claim should also be dismissed because she has not complied with the tender rule.  This rule requires plaintiffs who challenge the validity of a completed foreclosure action to tender the amount due and owing on the secured indebtedness as a prerequisite to maintaining the action.[10]   *See Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (Cal.

---

[7]   *See also Ernestberg v. Mtg. Investors Group*, Case No. 2:08-cv-1304-RCJ-RJJ, 2009 WL 160241, at *6 (D. Nev. Jan. 22, 2009) ("Plaintiff does not contest that he defaulted on the loan"); *Coward*, Case No. 2:09-cv-01143-RCJ-GWF, 2009 WL 3367398, at *9 (D. Nev. Oct. 14, 2009) ("Plaintiff has admitted default"); *see also Labra v. Cal-Western Reconveyance Corp.*, Case No. C 09-2537 PJH, 2010 WL 889537, at *9 (N.D. Cal. Mar. 11, 2010) (dismissing wrongful foreclosure claim because Plaintiff did not fulfill their obligations under deeds of trust by making timely payments); *Roque v. SunTrust Mtg. Inc.*, Case No. C-09-00040 RMW, 2010 WL 546896, at *4 (N.D. Cal. Feb. 10, 2010) (dismissing wrongful foreclosure claim because plaintiff was "unable to assert that no breach of performance occurred").

[8]   Wensley does assert that "Borrower/Plaintiff did pay the payments agreed in the 'Note'." Compl. ¶30. This allegation is false.  The Notice of Default indicates that Wensley has not made a mortgage payment since September 2008.

[9]   Wensley also alleges ASC no longer has an interest in the loan because "[t]he obligations" on her loan "w[as] discharged" as a result of "over-collateralization of the obligations," "credit default swaps," or "federal bailout funds." *See* Compl. ¶107.  However, in *Green I*, this Court held that this vague allegation, "even if . . . true, is not tantamount to an assertion that Plaintiffs were not in default on their mortgages," and therefore Plaintiffs "fail[ed] to state a claim for wrongful foreclosure." *Green I*, slip op. at 4-5.

[10]   Although Nevada courts have not explicitly adopted the tender rule, they are likely to adhere to it because it is an outgrowth of the equitable maxim recognized in Nevada that a party seeking equity must do equity, and also because Nevada courts look to California law when Nevada law is silent, *Hiekel v. 268 Ltd.*, 887 F.2d 1089, 1989 (9th Cir. 1989); *Ernestberg*, 2009 WL 160241, at *5, and California employs the tender rule.  Indeed, numerous District Courts within California have recently dismissed wrongful foreclosure claims because of a plaintiff's failure to tender the loan amount.  *See, e.g., Labra*, 2010 WL 889537, at *9 (dismissing wrongful foreclosure claim because of Plaintiff's failure to tender); *Somera v. Indymac Fed. Bank FSB*, Case No. 2:09-cv-01947-FCD-DAD, 2010 WL 761221, at *8-9 (E.D. Cal. Mar. 3, 2010) (same).

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

Ct. App. 1996) (appellants required to allege tender of the amount of the secured indebtedness to challenge foreclosure sale); *U.S. Cold Storage of Cal. v. Great W. Sav. & Loan Ass'n*, 165 Cal. App. 3d 1214, 1222 (Cal. Ct. App. 1985) (the "law is long-established" that tender of the obligation in full by a trustor is a "prerequisite to challenge of the foreclosure sale"); *Cagle v. Carlson*, 705 P.2d 1343, 1345 (Ariz. Ct. App. 1985) ("he who seeks equity must do equity;" because plaintiff was "legally and morally indebted" to defendant for the amount the property sold for in foreclosure sale, tender of that amount was a condition precedent to setting aside foreclosure sale) (internal quotation and citation omitted). Wensley has not offered to tender to the Court or to defendants amounts due and owing on her loan. As a result, her wrongful foreclosure claim should be dismissed. *See Keen v. Am. Home Mtg. Serv., Inc.*, Case No. Civ. 2-09-01026 FCD, 2009 WL 3380454, at *10-11 (E.D. Cal. Oct. 21, 2009) (plaintiff failed to allege "any facts supporting her ability to tender any payment" and "an immediate ability or willingness to tender payment").

> ## 2. Wensley's "Violation of NRS 107.080 Claim" Is Not a Recognized Private Tort in Nevada and Otherwise Fails Because the Foreclosure at Issue Is Valid

To the extent Wensley's "Violation of NRS 107.080" cause of action is not a wrongful foreclosure claim, Wensley cannot state a claim upon which relief may be granted. Indeed, as this Court has recognized, "NRS 107.080 does not provide plaintiff homeowners with a private right of action for tort damages." *See Berilo v. HSBC Mortg. Corp., USA*, No. 2:09-cv-02353-RLH-PAL, 2010 WL 2667218, *3 (D. Nev. 2010). Rather, it merely "allow[s] a court to void a trustee sale if, inter alia, the person or entity that conducted the sale did not substantially comply with the statute." *See id.*, WL 2667218, at *3. Thus, such claims are interpreted as "request[s] to void the trustee sale as a result of Defendants' substantial non-compliance with NRS 107.080." *See id.*, WL 2667218, at *3. Wensley cannot state a claim for the only relief available under NRS 107.080—rescission of a trustee's sale—because no sale has occurred.

In addition, Wensley cannot state a claim for a violation of NRS 107.080 because the foreclosure here is entirely proper.

Wensley obtained a loan in the amount of $495,000 from First National and secured this loan with a deed of trust against the property. **Ex. A**. The trustee was Stewart Title Company. *Id.*

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

MERS, the beneficiary under the deed of trust, substituted HSBC Trust as trustee. **Ex. B**. The deed of trust allowed the lender to foreclose on the property if Wensley did not make her loan payments. **Ex A**. In September 2008, Wensley defaulted under the note. Accordingly, ASC, through its agent, National Default Servicing Corporation, recorded a Notice of Default and Election to Sell under Deed of Trust. The proper has not yet been sold. The foreclosure at issue is statutorily proper.

**F.    Quiet Title is Not Appropriate as Wensley Admits She Encumbered The Property**

In her sixth claim for relief, Wensley seeks to quiet title because ASC "recorded the Deed of Trust, or other document(s), which indicate at least one of the Defendants possesses a security interest" which are "invalid and of no force and effect and constitutes a 'cloud' on Plaintiff[s'] legal ownership." *See* Compl. ¶ 103 and fn. 16.[11]    Wensley alleges that she "need not tender the obligation in order to Quiet Title." Compl., ¶ 119. Wensley seeks an order stating that "Defendants have no right, title, estate, lien or interest in [the] property[.]" Compl. ¶ 120(a).

Wensley's quiet title claim should be dismissed because it is dependent on her other failed claims. But even if her other claims did not fail, quieting title is not a proper remedy in this case. "A quiet title claim requires a plaintiff to allege that the defendant is unlawfully asserting an adverse claim to title to real property." *Kemberling v. Ocwen Loan Servicing, LLC*, Case No. 2:09-cv-00567, 2009 WL 5039495, at *2 (D. Nev. Dec. 15, 2009). "The very object of the proceeding assumes that there are other claimants adverse to the Plaintiff, setting up titles and interests in the land or other subject-matter hostile to his [own]." *See Clay v. Scheeline Banking & Trust Co.*, 40 Nev. 9, 16, 159 P. 1081, 1082 (1916). Where such adverse claims exist, the party seeking to have another party's right to property extinguished, bears the burden of overcoming the "presumption in favor of the record titleholder." *See Breliant v. Preferred Corp.*, 112 Nev. 663, 669, 918 P.2d 314, 318 (1996); s*ee Clay*, 40 Nev. at 16, 159 P. at 1082.

Here, Wensley admits she borrowed money, and then secured the loan with a Deed of Trust. There is no other party claiming any interest in Wensley's property that is adverse to Wensley's title

---

[11]    Wensley's quiet title claim also reiterates a number of the claims addressed above—i.e. that the deed of trust has been split from the note and rendered worthless, and that Wensley need not tender to quiet title in her favor as a result of the alleged splitting of the note and deed of trust.

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

and/or the deed of trust.  Wensley's dislike for the deed of trust she executed does not create an adverse claim that entitles her to an order quieting title.

The only way this quiet title action would be necessary is if there was presently a dispute between two or more parties over the right to foreclose under the deed of trust.  Wensley does not assert that more than one entity claims the right to foreclose on the deed of trust, so her claim to quiet title has no merit.

Further, because an action to quiet title is equitable in nature, *see MacDonald v. Krause*, 77 Nev. 312, 317-18, 362 P.2d 724 (1961), Wensley must show her right to such equitable relief.  *See Transaero Land & Dev. Co. v. Land Title Co. of Nev., Inc.*, 108 Nev. 997, 1001, 842 P.2d 716 (1992) ("[I]n seeking equity, a party is required to do equity.") (internal quotation omitted).  In this case, Wensley voluntarily executed the promissory note and deed of trust.  She has failed to make the payments due on the loan, and now seeks to deprive the creditors of their security by quieting title.  This would be an inequitable result.  Where a defaulting mortgagor or trustor attempts to quiet title against the mortgagee, equity is served by requiring the debtor purporting to quiet title to pay the full amount of the outstanding debt.  *See, e.g., Trusty v. Ray*, 249 P.2d 814 (Idaho 1951); *see also Mix v. Sodd*, 126 Cal. App. 3d 386, 390 (1981) (no quiet title action may lie without paying the debt, even if debt is otherwise unenforceable).  This Court should reject Wensley's attempt to obtain a windfall from her loan by eliminating the deed of trust.  Wensley's quiet title claim should be dismissed.

**G.    Wensley's Fraud Claims Should Be Dismissed Because They Do Not Satisfy FRCP 9(b)**

Wensley fails to state a claim for fraud by omission or fraud in the inducement.  **First**, Wensley's claims relating to the origination of the loan are time-barred.  Common law fraud is subject to a three-year statute of limitations.  *See* NRS § 11.190(3)(d).  Wensley did not file her complaint over six years after she took out her loan.  The fraud claims are time-barred.  Although equitable tolling may apply to fraud claims, Wensley does not plead any facts that suggest equitable tolling applies in this case.  **Second**, the conclusory allegations in the fraud claims do not come close to stating a claim of fraud under Nevada law.

/ / /

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1.      **Wells Fargo Did Not Owe Wensley A Fiduciary Duty of Care**

To the extent Wensley claims that Wells Fargo committed fraud by failing to advise her about her loan terms, her claims must be dismissed as a matter of law because Wells Fargo had no duty of disclosure.  "In order for a mere omission to constitute actionable fraud, a plaintiff must first demonstrate that the defendant had a duty to disclose the fact at issue."  *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1417 (D. Nev. 1995) (citation omitted).[12]

Further, Wensley does not allege the existence of a fiduciary or other duty on the part of Wells Fargo and does not plead facts that would give rise to such a duty.  Nor could she, because it is well-settled (including in multiple decisions from this District) that a lender owes no fiduciary duties to mortgage borrowers absent "exceptional circumstances."  *Kwok v. CR Title Co., et al.*, Case No. 2:09-cv-2298, slip op. at 5 (D. Nev. Jun. 23, 2010) (Hunt, R.) ("[A] lender owes no fiduciary duties to a borrower absent exceptional circumstances").  The Court should dismiss Wensley's fraud claims on this basis alone.

2.      **Wensley's Fraud Claims Do Not Comply With Fed. R. Civ. P. 9**

Wensley's fraud claims should also be dismissed because they fail to comply with Fed. R. Civ. P. 9(b).  Rule 9(b) provides that all "circumstances constituting the fraud . . . shall be stated with particularity."  *See Berry v. Valence Tech., Inc.*, 175 F.3d 699, 706 (9th Cir. 1999).  Averments of fraud must be specific enough to put a defendant on notice of the particular misconduct the defendant is alleged to have committed in order to properly defend against the allegations.  *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).  Thus, a plaintiff is required to plead the **time, place and substance** of the fraud and **specifically detail** the defendant's allegedly wrongful acts, including when they occurred and who engaged in the misconduct.  *See*, *e.g.*, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (emphasis added).

---

[12]   In support of her fraud claims, Wensley argues that Wells Fargo and/or other defendants failed to make required disclosures in connection with her loan.  To the extent WEnsley argues that state law contradicts the disclosure requirements of the federal Truth in Lending Act ("TILA"), those claims would be preempted thereby.  *See* 15 U.S.C. § 1610(e).  Finally, Wensley's TILA claim is time-barred.  A claim under TILA must be brought within one year of the closing of the loan transaction.  *See* 15 U.S.C. § 1640(e).  Wensley's loan closed in 2005 – her TILA claim is approximately six years late.

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

Wensley's fraud claims lack the necessary particularity.   Wensley fails to allege **which** defendant committed **what** alleged wrongful act, and **when** and **where** these alleged wrongful acts took place.   Rather, the complaint contains only general allegations about alleged failure to disclose information contained in the loan and origination documents and alleged failure to explain the bases on which Wensley qualified for her loan.

Moreover, the fraud claims are deficient because they do not "specify the misrepresentations [and] explain in what way they were false." *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984) *Spencer v. DHI Mtg., Inc.*, 642 F. Supp. 2d 1153, 1164 (E.D. Cal. 2009) ("[A] Plaintiff asserting fraud against a corporate [entity] must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written") (internal quotation omitted).

The complaint contains no allegations of specific misrepresentations with respect to Wensley's loan.   It does not allege who made the alleged misrepresentations or when the alleged misrepresentations took place, nor does the complaint allege what Wells Fargo allegedly said to mislead Wensley regarding her ability to make payments on the loan or what it explained regarding the "risk of default" and the "risk of foreclosure," and why those statements were false.   Because Wensley fails to meet her burden of pleading fraud with specificity, the seventh and eighth claims for relief must be dismissed.   *See Goodwin v. Exec. Trustee Servs., LLC*, 680 F. Supp. 2d 1244, 1256-57 (D. Nev. 2010) (dismissing similarly pled fraud claims); *Lopez v. Exec. Trustee Servs., LLC*, 3:09-CV-0180-ECR, slip op. at 17 (same); *see also Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*, 270 Fed. Appx. 570, 572 (9th Cir. 2008) (affirming dismissal of fraud claims stemming from the sale of mortgage loans on the secondary market by a mortgage broker due to a lack of factual specificity.).

/ / /

/ / /

/ / /

/ / /

/ / /

**H.     Wensley Has Not And Can Not State a Slander of Title Claim**

In her eighth claim for relief, Wensley alleges that Wells Fargo slandered her title by recording the Notice of Default and Election to Sell.  In particular, Wensley contends that "WELLS FARGO. … knew that [it] did not have any grounds to believe that the Plaintiff owed [it] any money on the Note. . . [and] that [it is] not authorized parties to foreclose and take legal title but [has] recorded documents or failed to record documents that have disparaged the title to the Plaintiff's properties pursuant to recording Notices of Default that were defective for, among other reasons, failure to serve upon the Plaintiff, and in violation of NRS 107.080 and NRS 107.087."  *See* Compl. 157-158.[13]

To state a slander of title claim, Wensley must allege a "false and malicious communication, disparaging to her title in land, and causing special damage."  *See Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 842, 963 P.2d 465, 478 (1998); *Higgins v. Higgins*, 103 Nev. 443, 445, 744 P.2d 530, 531 (1987) (internal citations omitted).  Wensley cannot validly allege the foregoing.

In *Ramos v. Mortgage Elec. Registrations System, Inc.*, the plaintiffs alleged that recorded notices of default slandered their title.  No. 2:08-CV-1089-ECR-RJJ, 2009 WL 5651132 (D. Nev. March 5, 2009).  This Court dismissed that claim, noting:

> Plaintiffs do not dispute that they were in default on their loan. Nor is it false that the property was to be sold at a trustee's sale. As noted above, Defendants were acting within their authority under the Deed of Trust in conducting the foreclosure. It is not clear, therefore, what Plaintiffs might assert to be false or malicious about the recorded notice. We conclude that Plaintiffs have failed to state a claim for slander of title.

2009 WL 5651132, at *4; *see also Saterbak v. MTC Fin. Inc.*,  No. 3:10-cv-501-RCJ-VPC, 2011 WL 484300, slip op. (D. Nev. Feb. 4, 2011) (dismissing slander of title claim arising from recordation of notice of default because the trustee had the authority to initiate the foreclosure process and because Plaintiff never alleged that she was not in default).  Courts throughout the Ninth Circuit have embraced similar reasoning.  *See In re: MERS Litigation*, MDL Docket No. 09-2119-JAT, 2010 WL 4038788 (D. Ariz. Sept. 30, 2010) ("Plaintiffs bring claims for slander of title . . . on the allegation

---

[13]   Wensley wholly fails to explain the manner in which service of the Notice of Default was improper.

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

that certain defendants wrongfully recorded notices of default and intent to foreclose against Plaintiffs' property. . . . Here, Plaintiffs have not sufficiently alleged the falsity of these communications. . . . [because] there is no allegation that Plaintiffs were not in default or that a trustee's sale was actually not scheduled. The only alleged falsity emerges from Plaintiffs' argument that the MERS recordation process splits the note from the deed of trust, renders the note unenforceable, and thus all subsequent action-including these recordations-are invalid and false.").

Here, as in *Ramos*, it is not false that the property could be sold at a trustee's sale. *See* 2009 WL 5651132, at *4. Moreover, as in *Ramos*, *Saterbak*, and *In Re: MERS Litigation*, Wensley does not meaningfully deny her default under the note but merely implies that Wells Fargo is not entitled to collect on her loan. The Court should reach the conclusion it reached in *Ramos* and *Saterbak* and dismiss Wensley's slander of title claim.

Finally, in asserting that Wells Fargo "knew that [it] did not have any grounds to believe that the Plaintiff owed [it] any money on the Note," "that [Wells Fargo] is not authorized parties to foreclose and take legal title," and that the "Notices of Default that were defective for, among other reasons, failure to serve upon the Plaintiff, and in violation of NRS 107.080 and NRS 107.087," *See* Compl. ¶¶ 157-158, Wensley wholly fails to state a slander of title claim that is sufficient under *Twombly*. As the *Twombly* Court explained, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation' of the elements of a cause of action will not do," nor will a complaint "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Wensley does nothing more than reiterate the elements of a "slander of title" claim in a transparent attempt to avoid dismissal. Wensley's slander of title claim is improperly pled and warrants dismissal with prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**I.      Wensley's Abuse of Process Claim Fails as a Matter of Law and Is Improperly Pled**

In her final claim for relief, Wensley alleges that in serving the notice of default on Wensley, Wells Fargo engaged in abuse of process.  To prevail on an abuse of process claim, Wensley must demonstrate (1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding.  *See Exec. Mgmt.*, 114 Nev. at 843, 963 P.2d at 478.

As a threshold matter, service of the notice of default cannot support an abuse of process claim.  In *Meadows v. Bakersfield Sav. & Loan Ass'n*, the California Court of Appeals noted that "the essence of the tort 'abuse of process' lies in the misuse of the power of the court."  250 Cal. App. 2d 749, 753 (Cal. Ct. App. 1967).  The *Meadows* Court concluded that improper posting of a notice of default and notice of sale cannot support an abuse of process claim, as non-judicial foreclosure proceedings "in nowise emanate[] from or rest[] upon the authority or jurisdiction of a court."  250 Cal. App. 2d at 753.  This Court has cited *Meadows* favorably, noting that a plaintiff could not state an abuse of process claim where no court proceedings were instituted, as "[a]n essential element of an abuse of process cause of action is 'the misuse of the power of the court; [the abuse of process tort] is an act done in the name of the court and under its authority for the purpose of perpetrating injustice. . . .'"  *Ungaro v. Desert Palace, Inc.*, 732 F. Supp. 1522, 1529 n. 2 (D. Nev. 1989) (citations omitted).   As a matter of law, Wensley's abuse of process claim fails because the foreclosure at issue is non-judicial.

Even if Wensley could base her abuse of process claim on the notice of default, her abuse of process claim is insufficiently pled.  In arguing that service of the notice of was an abuse of process, Wensley reiterates the baseless allegations contained elsewhere in her complaint.  Specifically, Wensley argues that "[Wells Fargo] . . . and its alleged agents knew that they were not the Trustee named in the deed of trust," that "[Wells Fargo] . . . and its alleged agents . . . all knew they did not have any grounds to believe that the plaintiff owed them any money on the Note, nor do they represent the actual investors on the Deed of Trust or Note, "Wells Fargo . . . had no authority to execute a Notice of Default . . . and notice was not properly served pursuant to NRS 107.087," and "the purpose of the service of the Notice of Default was not to collect on the Plaintiff's Note as the

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

document states; rather the actual or ulterior purpose of serving it was to collect fees, insurance claims, credit swap default payments . . . ." *See* Compl. ¶¶ 164.

As fully set forth in the preceding sections, none of Wensley's arguments regarding Wells Fargo's standing to foreclose are valid.   However, even if they were, Wensley's allegations that Wells Fargo acted with ulterior motives are nothing more than "'naked assertion[s]' devoid of 'further factual enhancement.'"   *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Wensley's abuse of process claim should be dismissed with prejudice.

## V.

### CONCLUSION

For the reasons stated above, Wells Fargo requests that this Court dismiss each of Wensley's claims and the complaint with prejudice, or grant summary judgment thereon.   Further, Wells Fargo requests that this Court issue an order expunging the *lis pendens* that Wensley recorded in connection with this lawsuit.

DATED this 16th day of February, 2012.

AKERMAN SENTERFITT LLP


 /s/ Christine Parvan
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
CHRISTINE M. PARVAN, ESQ.
Nevada Bar No. 10711
Akerman Senterfitt LLP
1160 Town Center Drive, Suite 330
Las Vegas, Nevada  89144
Telephone:     (702) 634-5000
Facsimile:     (702) 380-8572

*Attorneys for Defendants*
*Wells Fargo Bank, N.A. dba America's*
*Servicing Company*

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 16th day of February, 2012 and pursuant to FRCP 5, I served via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing , postage prepaid and addressed to:

RICK LAWTON, ESQ.
LAW OFFICES OF RICK LAWTON, ESQ.
1640 Hwy 95A, North #1
Fernley, Nevada  89408

*Attorneys for Plaintiff*

CHRISTINA H. WANG, ESQ.
THOMAS A. RYAN, ESQ.
FIDELITY NATIONAL LAW GROUP
2450 St. Rose Parkway, Suite 150
Henderson, Nevada  89074

*Attorneys for Defendant*
*Stanley S. Silva*

   /s/ Sarah Starkey                              
An employee of AKERMAN SENTERFITT LLP

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572